# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

PNC BANK, N.A.,

           **Plaintiff,**

v.

ANDRE VAN HOORNAAR, and
ASTRID GROENVELD, and
NATIONAL CITY BANK,

           **Defendants.**           Case No. 13-C-1020

---

ANDRE VAN HOORNAAR,

           **Counterclaimant,**

v.

PNC BANK, N.A.,
successor by merger to
NATIONAL CITY BANK,
and successor by merger to
NATIONAL CITY MORTGAGE, a division of
NATIONAL CITY BANK OF INDIANA,

           **Counterclaim Defendant.**

---

## DECISION AND ORDER

---

Defendants Andre van Hoornaar ("van Hoornaar") and his wife, Astrid Groenveld, (collectively the "Defendants") obtained a mortgage from Plaintiff PNC Bank, N.A's ("PNC") predecessor on property located at 131

25th Avenue, Kenosha, Wisconsin (the "Property"). PNC filed a foreclosure action in state circuit court. (ECF No. 10-1) The Defendants removed the action to this District invoking diversity jurisdiction pursuant to 28 U.S.C. § 1331.[1] Van Hoornaar filed Counterclaims against PNC, which are styled as class action claims: breach of contract and declaratory judgment (Count I & II); violation of the Wisconsin recording statute (Count III) and trespass (Count IV).

This action is before the Court on PNC's motions to dismiss the Counterclaims and to strike, and the Defendants' motions to dismiss and for leave to file PNC's settlement offer under seal. (ECF Nos. 16, 20, 25, 27.)

## MOTION TO DISMISS COUNTERCLAIMS

Pursuant to Fed. R. Civ. P. 12(b)(6), PNC asserts that van Hoornaar's Counterclaims should be dismissed because they fail to state a cause of action.

## Standard of Review

For a complaint to withstand a Rule 12(b)(6) motion, a claimant is required to provide "a short and plain statement of the claim showing that

---

[1] At the Court's direction the Defendants filed an amended notice of removal (ECF Nos. 5, 10.) which rectifies the jurisdictional issue raised by the Court.

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2)  The pleading must include more than mere legal conclusions or a recitation of the cause of action elements, but does not require detailed factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The pleading must meet a plausibility threshold; mere possibility is not enough.  *Id.* at 570. Plausibility means there are enough facts in the complaint for a reviewing court to draw a reasonable inference that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, the Court need not accept as true its legal conclusions; "[t]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements," do not suffice." *See id.* at 663 (citing *Twombly*, 550 U.S. at 555).

Even after *Twombly,* courts must still approach motions under Rule 12(b)(6) by "constru[ing] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008).  This threshold requires a court to utilize its judicial experience and common sense within the context of the facts to determine whether the pleading meets the plausibility standard. *Iqbal*, 556 U.S. at 679.

A motion under Rule 12(b)(6) can be based only on the complaint

itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice. *See Geinosky v. City of Chicago,* 675 F.3d 743, 745 n.1 (7th Cir. 2012) (citing Fed. R. Civ. P. 10(c) (written instrument that is exhibit to pleading is part of pleading for all purposes); *Papasan v. Allain,* 478 U.S. 265, 268 n.1 (1986) (judicial notice of public records); *188 LLC v. Trinity Indus., Inc.,* 300 F.3d 730, 735 (7th Cir. 2002) (documents referred to in complaint and central to claim)).

When a defendant's Rule 12(b)(6) motion presents matters outside the pleadings, the court may either exclude those matters or convert the motion to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). The Court has excluded the FedEx receipt attached to van Hoornaar's response brief. However, the Court may consider new facts asserted in a plaintiff's brief. *See Geinosky,* 675 F.3d at 745 n.1.

*Factual Background[2]*

In 2006, van Hoornaar entered into a loan for the Property with PNC's predecessor. The loan was "owned or guaranteed by the Federal National Mortgage Association," commonly known as Fannie Mae.

---

[2] The factual background is based on the allegations of the Complaint which are taken as true for purposes of the motion to dismiss.

(Second Am. Countercl. ("Countercl."), ¶¶ 28, 29.) (ECF No. 15.)   In February 2013, when he was living in Asia, van Hoornaar "stopped making payment to PNC on his first mortgage" and "chose not to apply for HAFA[3] benefits" after this default.  (*Id.* at ¶ 20.)  Van Hoornaar states that had PNC offered, he would have complied with a deed-in-lieu of foreclosure, under 24 C.F.R. § 203.357.  (*Id.*)  Instead, on June 26, 2013, PNC filed a foreclosure action against the Defendants.  (*Id.*)

Van Hoornaar fully repaid a second mortgage with PNC, and on August 21, 2013, he "caused to be personally delivered to [PNC] . . . a request to Terminate and Satisfy/Discharge the 2nd mortgage on the property."  (*Id.* at ¶ 54.)  On September 10, PNC recorded a release and satisfaction of the second mortgage.  (*Id.* at ¶ 55.)

In mid-September, PNC posted a notice on the property stating that it appeared to be abandoned and that PNC's agents would enter it to protect it.  On September 27, van Hoornaar's attorney called PNC and informed it that the property was not abandoned and was being maintained.  Van Hoornaar's attorney also sent a confirming email.  On September 28, PNC's agents entered the property without consent from

---

[3] The Home Affordable Foreclosure Alternatives ("HAFA") program established by the Secretary of the Treasury in conjunction with the director of the Federal Housing Finance Agency ("FHFA").

van Hoornaar or his wife and damaged/changed the lock on the back door, allowing PNC to enter the property at will. PNC also winterized the house without consent, including draining the pipes making the property no longer habitable.

*Breach of Contract and Declaratory Judgment Claims*

PNC asserts that van Hoornaar fails to state claims for breach of contract and declaratory judgment because the National Housing Act and the Department of Housing and Urban Development ("HUD") regulations, upon which they rely (1) are not applicable to van Hoornaar's loan, and (2) do not create a private cause of action, citing *Herron v. Fannie Mae,* 857 F. Supp. 2d 87, 93 (D.D.C. 2012). Van Hoornaar counters that counts I and II are Fifth Amendment equal protection claims intertwined with his contract claims, and that *Herron* is flawed because it assumes FHFA's takeover of Fannie Mae was legal. Van Hoornaar urges the Court to stay its decision until issuance of a decision on the United States' motion to dismiss in *Washington Federal et al. v. United States*, No. 13-385C (Fed. Ct. Cl.). Van Hoornaar also requests leave to amend his Counterclaims to correct any deficiencies.

Van Hoornaar's Counterclaims do not mention any Fifth Amendment equal protection claim or name any federal official. His

response to PNC's motion to dismiss refers to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), which makes available a private action for monetary relief against federal officials for the violation of constitutional rights. However, a complaint may not be amended by a brief in opposition to a motion to dismiss. *See Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984).

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance. *Id.* at 254-55. The moving party must make a "clear case of hardship or inequity in being required to go forward" if there is a fair possibility the non-moving party would be harmed by delay. *Id.* at 255; *see Clinton v. Jones*, 520 U.S. 681, 708 (1997) (movant petitioning for a stay bears the burden of establishing its need). Van Hoornaar's request for a stay is based on his prediction that a non-binding decision on a motion to dismiss will be favorable to his position. Van Hoornaar has not established that these proceedings should be stayed.

Counts I and II of van Hoornaar's Counterclaims are based the

- 7 -

Housing and Economic Recovery Act of 2008 ("HERA") which created FHFA, the federal regulatory agency currently charged with general supervisory and regulatory authority over Fannie Mae and Federal Home Loan Mortgage Corporation ("Freddie Mac"). 12 U.S.C. § 4511(b). (Countercl. ¶¶ 32, 33.) Although van Hoornaar's loan was not "guaranteed by HUD," he asserts that "he is entitled to all the rights and protections under 24 CFR Part 203, in as much as the United States of America . . . in taking over Fannie Mae and funding its losses, with taxpayer funds, has effected a defacto [sic] guaranty of van Hoornaar's loan subjecting PNC Bank and/or Fannie Mae to the loss mitigation provisions of 24 CFR [§] 203.501." (*Id*. at ¶¶ 35, 76.)

Van Hoornaar alleges that FHFA took over the functions of the Office of Federal Housing Enterprise Oversight which was transferred into FHFA. (*Id*. at ¶ 32.) In September 2008, in coordination with the Secretary of the United States Treasury, Henry Paulson, FHFA became the conservator of both Fannie Mae and Freddie Mac through the authority of HERA. (*Id*.) The conservatorships were precipitated by the economic crisis that followed the collapse in the housing market, and the concomitant drop in the value of assets held by these Government Sponsored Enterprises ("GSE"). (*Id*.) Van Hoornaar alleges that his loan, by operation of this

mechanism created by Congress under HERA and funded by the Treasury, constitutes a de facto loan guarantee by the United States such that the provisions of 12 U.S.C. § 1715u(a) and/or 24 C.F.R. Part 203, specifically 24 C.F.R. § 203.501, should be declared to apply as a servicing standard for servicing his loan.  (*Id.* at ¶ 34.)  He further alleges that specific foreclosure alternatives are identified for mortgagees to mitigate their losses, among them, accepting deeds in lieu of foreclosure under 24 C.F.R. § 203.357, and *"[a]lthough van Hoornaar's loan is not specifically guaranteed by [HUD], the Treasury's guaranty of Fannie Mae loans by funding its losses through the HERA conservatorship mechanism invokes the Congressionally mandated loss mitigation requirements upon PNC."*  (*Id.* at ¶ 35.) (Emphasis added.)

Van Hoornaar also relies upon the applicable law provision in paragraph 16 of the loan agreement as making the protections of 24 C.F.R. Part 203 applicable to his loan and creating a private cause of action in his favor when they are breached by PNC.  Paragraph 16 states, "Governing Law . . . This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law . . . "  (Compl., Ex. B ¶ 16.)

(ECF No. 10-1.) "Applicable Law" is defined in the mortgage as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." (*Id.*, Ex. B ¶ H.)

Part 203, Subpart C of the HUD regulations, the chief provision on which van Hoornaar relies, states "[t]his subpart identifies servicing practices of lending institutions that HUD considers acceptable for mortgages insured by HUD." 24 C.F.R. § 203.500. Courts have recognized that HUD's servicing regulations "apply only to FHA insured mortgages." *Meyer v. CitiMortgage, Inc.,* No. 11-13432, 2012 WL 511995, at *3 n.5 (E.D. Mich. Feb. 16, 2012); *see also Wells Fargo Bank, N.A. v. Favino,* No. 1:10 CV 571, 2011 WL 1256771, at *12 (N.D. Ohio Mar. 31, 2011).

Van Hoornaar also oversimplifies the relationship between Fannie Mae and the Government. Fannie Mae is a private corporation which became a GSE. *See DeKalb Cnty. v. Fed. Hous. Fin. Agency,* 741 F.3d 795, 797 (7th Cir. 2013) (citing *Housing and Urban Development Act of 1968,* Pub. L. No. 90-448, 82 Stat. 476, 536 (codified, as amended, at 12 U.S.C. §§ 1716 *et seq.*)). However, due to risky mortgages and getting caught up in the housing bubble, Fannie Mae went broke, and since 2008 has been in

conservatorship.  *Id*. at 798.  The conservator is its regulatory agency, FHFA.  *Id*. (citing Office of Inspector General, FHFA, "Conservatorship FAQs," http://fhfaoig.gov/LearnMore/FAQ (visited Dec. 19, 2013)).  A conservatorship is like a receivership, except that a conservator, like a trustee in reorganization under Chapter 11 of the Bankruptcy Code, tries to return the bankrupt party to solvency, rather than liquidating it.  *Id*.

The federal Government does not insure particular mortgages held by Fannie Mae, but rather has invested in Fannie Mae through a preferred stock arrangement.  *See Herron,* 857 F. Supp. 2d at 96 (noting that Fannie Mae entered into a "Stock Agreement [that] also required Treasury to provide funding to Fannie Mae to ensure a positive net worth in exchange for shares of Senior Preferred Stock that pay a certain dividend.")  Fannie Mae mortgages are therefore not "guaranteed by HUD," and do not fall under the scope of the regulations on which van Hoornaar relies.

Even if the FHA regulations applied to van Hoornaar's loan, the Court concurs with the courts that have held that such regulations do not confer a private right of action for affirmative relief and damages.  *See, e.g., Collins v. BAC Home Loans,* No. 2:12-cv-3721-LSC, 2013 WL 2249123, at *3 (N.D. Ala. May 21, 2013); *Brake v. Wells Fargo Fin. Sys.*

*Fla., Inc.,* No. 8:10-CV-338-T-33TGW, 2011 WL 6719215, at *5 (M.D. Fla. Dec. 5, 2011) *adopted by* 2011 WL 6412430 (M.D. Fla. Dec. 21, 2011). Courts allowing such a theory to proceed based on contractual terms incorporating HUD regulations "represent the minority position." *Christenson v. Citimortgage, Inc.,* No. 12-cv-02600-CMA-KLM, 2013 WL 5291947, at *7 (D. Colo. Sept. 18, 2013) (collecting cases and agreeing with the majority view); *see also Dixon v. Wells Fargo Bank, N.A.,* No. 12-10174, 2012 WL 4450502, at *6 (E.D. Mich. Sept. 25, 2012).

Attempting to avoid the prohibition on a private right of action derived from the National Housing Act and HUD regulations, van Hoornaar alleges that PNC contracted to abide by these requirements in the underlying loan document, relying on the "Governing Law" and "Applicable Law" provisions of the mortgage. However, the HUD regulations are neither "controlling" nor "applicable" because the Defendants' mortgage was not "guaranteed by HUD." 24 C.F.R. § 203.500.

Van Hoornaar also invokes the covenant of good faith and fair dealing, but "[a] party may not . . . employ the good faith and fair dealing covenant to undo express terms of an agreement." *Beidel v. Sideline Software, Inc.,* 842 N.W.2d 240, 251 (Wis. 2013). In sum, van Hoornaar's argument that the provisions in the loan document incorporate the HUD

regulations fails to establish that his Complaint states a cause of action for a breach of contract claim or for declaratory judgment. Therefore, the PNC's motion as to these two counts is granted.

*Recording Statute Claim*

PNC asserts that van Hoornaar's claim under Wis. Stat. § 706.05(10) (the Wisconsin recording statute) (Count III) does not state a claim upon which relief may be granted because he does not allege that he served his request for satisfaction by certified mail as required by the statute. In his response brief, van Hoornaar asserts that the request was delivered by Federal Express, not by certified mail, and that he gave actual notice which is sufficient. (Countercl. Resp. Mot. Dismiss, 17-18.) (ECF No. 18.) (citing *Wis.'s Env't Decade, Inc. v. Pub. Ser. Comm'n,* 84 Wis.2d 504, 518, 267 N.W.2d 609, 617-18 (Wis. 1978) and *Patterson v. Bd. of Regents of Univ. of Wis. Sys.,* 103 Wis. 2d 358, 359, 309 N.W.2d 3, 4 (Wis. Ct. App. 1981)).

Section 706.05(10) (2011)[4] provides:

> (a) Unless otherwise requested in writing or unless par. (b) applies, a mortgage-holder shall execute and record a proper full satisfaction of a

_____

[4] The statute has been amended and renumbered as Wis. Stat. § 708.15 (2013). However, Wis. Stat. § 706.05(9) and (10) (2011), apply to a secured creditor that received partial or full payment or performance of the secured obligation before December 14, 2013. *See* Wis. Stat. § 708.15(5)(c).

mortgage, together with any instruments required to establish of record the right of the mortgagor to satisfy the mortgage, within 30 days after the date on which the mortgagor completes full performance of the conditions of the mortgage.

(b) A mortgage-holder shall execute and record a mortgage satisfaction as required under par. (a) within 7 days after both the mortgagor completes full performance and the mortgage-holder receives by certified mail a written request from the mortgagor for a full satisfaction.

(c) Any person who violates par. (b) is liable to the mortgagor for penalty damages of $100 for each day that the violation remains uncorrected, up to a total of $2,000, plus actual damages resulting from the violation. A person may not be held liable for actual damages unless the mortgagor paid the costs that are to be compensated.

In a diversity case, a federal court must apply the applicable state's law as enunciated by the highest state court or otherwise by the intermediate appellate courts of the state. *Kutsugeras v. AVCO Corp.,* 973 F.2d 1341, 1346 (7th Cir. 1992); *see also Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938). The parties have not cited any cases interpreting § 706.05(10)(b).

The interpretation and application of Wisconsin statutes is a question of law for the Wisconsin courts. *ABKA Ltd. P'ship v. Wis. Dep't of Natural Res.,* 255 Wis.2d 486, 503, 648 N.W.2d 854, 861 (Wis. 2002). Wisconsin courts construe statutory language based on its common and

ordinary meaning. *Barritt v. Lowe,* 266 Wis.2d 863, 867, 669 N.W.2d 189, 191 (Wis. Ct. App. 2002). When interpreting a statute, the sole purpose is to determine legislative intent. *Pool v. City of Sheboygan,* 293 Wis.2d 725, 729, 719 N.W.2d 792, 794 (Wis. Ct. App. 2006), *aff'd,* 300 Wis.2d 74, 729 N.W.2d 415 (Wis. 2007). "[I]f the language is plain and unambiguous, [the] analysis stops there." *Hellen v. Hellen,* 348 Wis.2d 223, 229, 831 N.W.2d 430, 433 (Wis. Ct. App. 2013).

The cases cited by the parties involve issues of statutory construction of the Wisconsin administrative review statutes and notice of claims against governmental entities or officers, agents or employees. *Wisconsin's Environmental Decade,* 267 N.W.2d at 617-18, addressed whether a petition for review was fatally defective because it was served before the order was actually mailed to the petitioner. The court held that the deviation did not "contravene the requirements of Wis. Stat. § 227.16, to the extent that the trial court lacked jurisdiction." *Id.*

*Patterson,* 309 N.W.2d at 4, reversed the lower court's dismissal of a petition for review because it had been served by registered mail rather than the personal service or service by certified mail required by Wis. Stat. § 227.16(1)(a). The appeals court held that "service by registered mail more than fulfill[ed] the statutory purpose behind the requirement of

service by certified mail."[5]

*Pool,* 719 N.W.2d at 794, cited by PNC in its reply brief, held that the service of a notice of disallowance of claim was not proper because it had been served on the claimant's daughter, rather than on the claimant as required by Wis. Stat. § 893.80(1g). Finding nothing ambiguous in the statute, the court rejected the City's "actual notice" argument. *Id.*

The Wisconsin Supreme Court addressed an earlier version of the recording statute, holding that: "The conditions must be actually performed or the payment actually made, to answer the demands of the statute. To make the statute mean actual, full performance, does not require a very strict construction even. It is the natural and usual meaning of the language itself. The plaintiff, by his tender, may have laid the foundation for a suit in equity for redemption or satisfaction of the mortgage, but not for the penalty provided by the statute." *Crumbly v. Bardon,* 70 Wis. 385, 36 N.W. 19, 20 (Wis. 1888).[6] In *Crumbly,* the Court

---

[5] *Weisensel v. Wis. Dep't of Health & Soc. Servs.,* 179 Wis.2d 637, 647, 508 N.W.2d 33, 37 (Wis. Ct. App. 1993) commented, "[w]hile the supreme court has permitted exceptions to the general rule that parties must strictly comply with sec. 227.53(1), Stats., to confer subject matter jurisdiction upon the trial court, those exceptions are few and limited to the facts of the particular cases."

[6] The court addressed Section 2256 of the revised statutes as amended by Chapter 100 of the Wisconsin Laws of 1883, which provided:

> If any mortgagee, his personal representative or assignee,
> after a full performance of the conditions of the mortgage,

held that the plaintiff had failed to state a claim because his allegations did not match those of the statute as written. *See also, Stone v. Lannon,* 6 Wis. 497, 501-02 (Wis. 1857).

Section 706.05(10)(b), imposes a rigorous 7-day requirement for a mortgage-holder to file a notice of satisfaction, rather than the usual 30-day requirement of § 706.05(10)(a), and it authorizes a $100 statutory penalty for each day the violation remains uncorrected — up to a maximum of $2,000. Wis. Stat. § 706.05(10)(c). The statute is unambiguous in stating that the mortgage-holder must receive the request for satisfaction by certified mail. Because PNC was not served by certified mail, van Hoornaar has not stated a claim for damages under the Wisconsin recording statute. *See Crumbly,* 36 N.W. at 20. Considering the allegations of the Counterclaims and van Hoornaar's concession that he did not send the request to PNC by certified mail, Count III does not state a plausible claim and is dismissed.

---

whether before or after a breach thereof, shall, for the space of seven days after being thereto requested, and a satisfaction piece in due form being to him or them tendered for execution "after tender of legal charges," refuse or neglect to discharge the same as provided in this chapter, or to execute and acknowledge a certificate of discharge or release thereof, he shall be liable to the mortgagor, his heirs or assigns, in the sum of one hundred dollars damages, and also for actual damages occasioned by such neglect or refusal to be recovered in an action.

*Trespass Counterclaim*

PNC asserts that van Hoornaar's trespass counterclaim (Count IV) should be dismissed because he consented to the entry on the property under the language of the mortgage, and that the Wisconsin court of appeals found a similar mortgage provision had established consent to entry, citing *Waterstone Bank SSB v. Heller*, 816 N.W.2d 350 (Wis. Ct. App. 2012) (unpublished).

A trespasser is "a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." *Antoniewicz v. Reszcynski,* 70 Wis. 2d 836, 843, 236 N.W.2d 1, 4 (Wis. 1975) (quoting *Restatement (Second) of Torts* § 329 (1965)). Thus, consent is a defense to a claim of trespass. *See Grygiel v. Monches Fish & Game Club, Inc.,* 328 Wis. 2d 436, 461 787 N.W.2d 6, 18 (Wis. 2010).

Paragraph 9 of the mortgage, titled "Protection of Lenders Interest in the Property and Rights Under this Security Interest," provides in relevant part:

> If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument . . . or (c) Borrower has abandoned the property then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's

> interest in the Property and rights under this
> Security Instrument, including protecting and/or
> assessing the value of the Property, and securing
> and/or repairing the Property. . . . Securing the
> Property includes, but is not limited to, entering
> the Property to make repairs, change locks,
> replace or board up doors and windows, drain
> water from pipes, eliminate building or other code
> violations or dangerous conditions, and have
> utilities turned on or off.

(Compl., Ex. B ¶ 9.) PNC asserts paragraph 9 establishes that van Hoornaar consented to the entry. Further, it contends that van Hoornaar abandoned the property and, therefore, paragraph 9(c) authorized it to secure the property.

Van Hoornaar contends that PNC has not considered other portions of paragraph 9 which require its actions be reasonable or appropriate, and paragraph 7 which he asserts requires "reasonable cause" to "inspect the interior of the improvements on the property" and notice to the borrower at "the time of or prior to such an interior inspection specifying such reasonable cause." (Compl., Ex. B ¶ 7.) Van Hoornaar focuses on PNC's obligations with respect to abandonment, and contends that he has alleged non-abandonment.

The interpretation and construction of a contract is a question of law. *Bank of Barron v. Gieseke,* 169 Wis. 2d 437, 454-55, 485 N.W.2d 426,

432 (Wis. Ct. App. 1992). "The general rule as to the construction of contracts is that the meaning of particular provisions in the contract is to be ascertained with reference to the contract as a whole." *Seitzinger v. Cmty. Health Network,* 270 Wis. 2d 1, 37, 676 N.W.2d 426, 444 (Wis. 2004).

Van Hoornaar has adequately plead that he did not abandon the property. However, he has not addressed PNC's rights based on his failure to perform the covenants and agreements contained in the mortgage; specifically, as of February 2013 he was not paying the principal and interest due on the Note. Because van Hoornaar breached the covenants and agreements contained in the mortgage, paragraph 9 allowed PNC to do "whatever is reasonable or appropriate to protect [its] interest in the property . . . including . . . securing and/or repairing the property." Paragraph 9 further clarifies that securing the property includes actions such as changing the locks, draining water from the pipes and having utilities turned on or off. (Compl., Ex. B ¶ 9.)

Van Hoornaar suggests that paragraph 7, titled "Preservation, Maintenance, and Protection of the Property, Inspections," requires PNC to demonstrate "reasonable cause" to enter the interior. Paragraph 7 states:

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

(*Id.* at ¶ 7.)

Van Hoornaar's interpretation of the mortgage conflicts with paragraph 9 which authorizes the lender to secure the premises in the event of a default or abandonment, and describes what the lender may do.

Van Hoornaar's interpretation is particularly problematic in the case of abandonment of property — when a lender may not know where the borrower is. Reading the mortgage as a whole, this Court concludes that paragraph 9 is properly construed as providing implied consent to entry upon the mortgaged premises when the borrower is in default. By signing the mortgage, van Hoornaar consented to entry upon his default. Therefore, his trespass claim fails to state a cause of action.

PNC's motion to dismiss van Hoornaar's Counterclaims is granted. With respect to van Hoornaar's request to be allowed leave to amend his Counterclaims, the Court denies such request as futile based on the foregoing analysis. *See Adams v. City of Indianapolis,* 742 F.3d 720, 734 (7th Cir. 2014).

## Motions to Strike and for Leave to File

Before addressing the Defendants' motion to dismiss, the Court resolves PNC's motion to strike[7] and the Defendants' motion for leave to file, both of which relate to disclosure of information regarding the parties' settlement negotiations. Section IV of the Defendants' reply brief discusses the negotiations and includes a request for permission to file PNC's

---

[7] PNC relies on Fed. R. Civ. P. 12(f), which provides authority to strike information from a pleading, as the basis for striking the brief. The types of pleadings in a civil case are listed in Rule 7, and a brief or memorandum is not included in that list. Therefore, the motion is considered as a motion to exclude.

January 24, 2014, settlement offer. The Defendants also filed a motion to file the offer.

PNC asserts that the information is barred by Fed. R. Evid. 408. The Defendants contend that the offer is admissible because of PNC's implied threat to add a claim for a deficiency judgment, and to show the disingenuous nature of the assertion in PNC's response brief that it prefers a judicial foreclosure proceeding to a deed-in-lieu of foreclosure.

Rule 408 prohibits evidence of settlement negotiations when presented to "prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408. This provision was added by the 2006 amendment to the Rules.[8] *See* Fed. R. Evid. 408 Advisory Comm. Notes (2006 Amend.)

The Defendants provide no facts to support their claim of an implied threat. Additionally, their claim that PNC was disingenuous constitutes a type of impeachment by inconsistent statement or contradiction. Therefore, PNC's motion to exclude is granted to the extent that the Court has not considered section IV of the Defendants' reply brief. It follows that the Defendants' request and motion for leave to file the offer are denied.

---

[8] The Committee indicated broad impeachment would tend to swallow the exclusionary rule and would impair the public policy of promoting settlements. See Fed. R. Evid. 408 Advisory Comm. Notes (2006 Amend.)(citing *McCormick on Evidence* at 186 (5th ed. 1999); *EEOC v. Gear Petroleum, Inc.,* 948 F.2d 1542 (10th Cir.1991)).

## Motion to Dismiss Foreclosure Claim in Exchange
## for Deed-In-Lieu of Foreclosure

Citing Fed. R. Civ. P. 12(b)(6), 54(b), and 67, the Defendants move for dismissal of PNC's foreclosure claim in exchange for their delivery of a deed-in-lieu of foreclosure. They contend this will mitigate damages that will be incurred by both parties: PNC will obtain the relief sought by its foreclosure action; i.e., title to the property in complete satisfaction of the indebtedness, and van Hoornaar's Counterclaims will be preserved without the possibility of PNC amending its pleadings to seek a deficiency judgment. Pursuant to Rule 67, the Defendants offer to deposit with the Court or deliver to PNC four documents[9] that would to allow PNC to take immediate title and possession of the property.

While relying on Rule 12(b)(6) (more properly Rule 12(c)), the Defendants have not asserted that PNC's pleading fails to state a claim.[10] "[F]oreclosure of a mortgage may be commenced when any condition of the mortgage is broken by the non-payment of any part of the debt secured

---

[9] The documents are: (i) a Deed-in-Lieu of Foreclosure to the property, (ii) an estoppel affidavit, (iii) a title affidavit, and (iv) information for filing a Wisconsin Transfer Tax. (*See* Exs. A-D, Mem. Defs. Mot. Dismiss.) (ECF Nos. 20-2 through 20-6.)

[10] PNC maintains that the Rule 12(b)(6) motion is untimely because it must be made before filing a responsive pleading. PNC is partially correct. The filing of a Rule 12(b)(6) motion must precede the filing of a responsive pleading; however, the defense of failure to state a claim may be raised by a motion for judgment on the pleadings. *See* Rule 12(h)(2). A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Adams,* 742 F.3d at 727-28.

thereby, when the same becomes due and remains unpaid." *Scheibe v. Kennedy,* 64 Wis. 564, 25 N.W. 646, 647 (Wis. 1885)  PNC has stated a claim for foreclosure by alleging that there is a mortgage on the property and that the Defendants defaulted by failing to make payments.

Wisconsin courts have held that foreclosure proceedings are equitable in nature, *Wis. Brick and Block Corp. v. Vogel,* 54 Wis. 2d 321, 327, 195 N.W.2d 664, 668 (Wis. 1972), and that whether to award equitable relief is within the trial court's discretion, *Timm v. Portage Cnty. Drainage Dist.,* 145 Wis. 2d 743, 752, 429 N.W.2d 512 (Wis. Ct. App. 1988). However, the Defendants have not cited any Wisconsin court case ordering the type of relief they seek, instead relying on *In re Pigg,* 453 B.R. 728 (Bankr. M D. Tenn. 2011) and *In re Perry,* 12-01633-8-RDD, 2012 WL 4795675 (Bankr. E.D.N.C. Oct. 9, 2012).  Both actions are distinguishable because, unlike this action, the mortgage holder had *not* commenced foreclosure actions; and the lender in *Perry* had not responded to the motion.

Additionally, bankruptcy courts disagree regarding whether a mortgage holder can be required to accept a surrender of property.  *See In re Rose,* 512 B.R. 790, 794 (Bankr. W.D.N.C. 2014) (denying request). Without devolving into the nuances of bankruptcy law not pertinent to this

action, the Court notes that *Rose* observed Florida law did not provide that a mortgage lender could be compelled to accept title to property, perhaps because doing so could injure the mortgage holder by forcing it to assume "burdens of ownership for which it did not contract." *Id* at 795-96.

The Defendants cite Rule 67. However, Rule 67 procedure "provides a place of safekeeping for disputed funds pending the resolution of a legal dispute, but it cannot be used as a means of altering the contractual relationships and legal duties [or rights] of the parties." *United States v. Tully,* 288 F.3d 982, 987 (7th Cir. 2002) (citations omitted).

The Defendants also cite Rule 54(b), which provides:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

A court should not enter a final judgment under Rule 54(b) unless the judgment is an "ultimate disposition of an individual claim entered in the course of a multiple claims action." *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 436 (1956). This action is not ripe for the ultimate disposition of PNC's foreclosure claim. The Defendants' motion to dismiss is denied.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

PNC's motion to dismiss the counterclaims (ECF No. 16) is **GRANTED**;

PNC's motion to exclude the Defendants' reply brief (ECF No. 25) is **GRANTED** as to part IV of that brief, and **DENIED** in all other respects;

The Defendants' motion to dismiss the foreclosure claim (ECF No. 20) is **DENIED**; and

The Defendants' motion for leave to file PNC's settlement offer under seal (ECF No. 27) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 5th day of September, 2014.

**BY THE COURT:**

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**